UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| FRANKLIN EUGENE ESKEW,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>NORTH AMERICAN STAINLESS, INC.  )<br>and DREW DAULTON,  )<br>)<br>Defendants.  ) | Civil No. 3:25-cv-00027-GFVT<br><br>**MEMORANDUM<br>OPINION<br>&<br>ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Eugene Eskew's Second Motion for an Extension of Time to serve Defendant Drew Daulton [R. 19] and Plaintiff's Motion to Open Discovery for the Purpose of Acquiring Service Information for Defendant Drew Daulton. [R. 22.] Although Plaintiff Eskew fails to establish good cause for a mandatory extension, the Court will **GRANT** a discretionary extension of time for service. However, because Plaintiff Eskew fails to establish good cause to open discovery, the Court will **DENY** Plaintiff Eskew's motion to expedite discovery.

**I**

Plaintiff filed the above-captioned matter on May 16, 2025, in Carroll Circuit Court. [R. 1.] On June 16, 2025, Defendant North American Stainless filed a Notice of Removal to this Court, invoking this Court's diversity jurisdiction. [R. 1.] Although both Plaintiff Eskew and Defendant Drew Daulton are citizens of Kentucky, Defendant NAS claims jurisdiction in this Court is proper because Mr. Daulton was fraudulently joined in this action. *Id.* On September 25, 2025, this Court issued an Order for Plaintiff to show cause as to why the claims against

Defendant Daulton should not be dismissed for failure of service pursuant to Federal Rule of Civil Procedure 4(m), as it had been more than 90 days since the filing of Plaintiff's Complaint. [R. 14.]

Plaintiff filed a response to that Order contemporaneously with his first request for an extension of time to serve Mr. Daulton. [R. 15.] Therein, Plaintiff evinced confusion with the procedures governing federal court proceedings, stating that he planned to use the discovery process to obtain Mr. Daulton's address and that he was waiting for this Court's decision on the pending Motion to Remand before attempting to serve Mr. Daulton again. [R. 16 at 2-3.] On October 17, 2025, the Court granted Plaintiff an additional thirty days to effect service on Mr. Daulton. [R. 17.] The Court also explained to Plaintiff why he could not wait to use the discovery process to serve Mr. Daulton, and why Plaintiff's ability to serve Mr. Daulton needed to be determined prior to the Court's decision on the pending Motion to Remand. [R. 17.]

The Court was hopeful that its recent Order shed light on the required service procedures, but the Plaintiff's confusion appears to persist. On November 14, 2025, the last business day before the Court-imposed deadline for the Plaintiff to serve Mr. Daulton, Plaintiff filed yet another request for additional time to serve Mr. Daulton. [R. 19.] Plaintiff also recently learned that he can request a waiver of summons from Mr. Daulton and reached out to counsel for Defendant North American Stainless to request this waiver on November 14, 2025. [R. 20-2 at 2-3.] However, counsel for NAS informed Plaintiff that they do not represent Mr. Daulton and thus do not have the authority to waive service on his behalf. *Id.* at 2.

Since this Court's Order on October 17, 2025, which granted Plaintiff thirty additional days to serve Mr. Daulton, Plaintiff claims he has had a process server attempt service on Mr. Daulton several times at his home address and one time at his place of work. [R. 19 at 1-2; R.

2

21-1.] Plaintiff's position is that he should be granted additional time to serve Mr. Daulton because Mr. Daulton is intentionally evading service. *Id.* Defendant NAS provided a declaration from Mr. Daulton, in which Mr. Daulton states that he reviewed security camera footage of his residence from the dates and times that Plaintiff claims the process server attempted service at Mr. Daulton's home address. [R. 20-1.] Mr. Daulton further states that he did not observe any person attempting to effect service on him in the security camera footage. *Id.* at 3. Mr. Daulton also states that a letter was mailed to his workplace by regular first-class mail, but no person has ever personally handed him a summons and complaint related to this matter. *Id.*

In reply, Plaintiff Eskew provided the Court with a declaration signed by Special Bailiff Tija Jackson, outlining her attempts to serve Mr. Daulton. [R. 21-1.] Ms. Jackson states that she has made six attempts to serve Mr. Daulton at two different locations between October 27, 2025 and November 13, 2025. *Id.* She further states that each time she attempted service at Mr. Daulton's purported home address, there were no lights on in the home and no vehicles outside the home. *Id.* When she attempted service at Mr. Daulton's place of work, she states that the person she spoke with would not confirm Mr. Daulton's employment and told her that they do not "call employees down for outside business." *Id.* at 2. With this background in mind, the Court turns its attention to the instant motions.

## II

### A

Federal Rule of Civil Procedure 4(c) put the onus on the plaintiff to have the summons and complaint served on the defendant within the time allowed by Rule 4(m). Fed. R. Civ. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served within the

3

time allowed by Rule 4(m).")  Under this same rule, a defendant does have a "duty to avoid unnecessary expenses of serving the summons" by waiving service, provided the plaintiff properly notifies and requests waiver of service.  Fed. R. Civ. Proc. 4(d).  If a defendant fails to waive properly requested service, the plaintiff may recover the expenses incurred in making service.  Fed. R. Civ. P. 4(d)(2).  The operative phrase for purposes of the present motion is "properly requested waiver of service," which means the plaintiff must follow the procedures set forth in rule 4(d)(1) for requesting a waiver of service in order to trigger the defendant's duty to avoid unnecessary expenses of serving the summons.  Fed. R. Civ. P. 4(d)(2).

As the Court noted in its previous Order, under Rule 4(m), if a defendant is not served within 90 days after the complaint is filed, the court must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  Fed. R. Civ. P. 4(m).  However, if the plaintiff shows "good cause" for the failure, the court must extend the time for service for an appropriate period.  *Id.*  Good cause may be satisfied by "a reasonable and diligent effort to effect service." *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 74 (6th Cir. 1994).  Courts undertaking a 4(m) analysis first "determine whether the plaintiff has shown good cause for the failure to effect service."  *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424 (6th Cir. 2000) (Table).  If he has, the rule's mandatory language requires the court to extend the time for service.  *Id.*

However, "if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified time."  *Id.*  "In other words, the court has discretion to permit late service even absent a showing of good cause."  *Id.*; *see also United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022), *cert. denied sub nom. United States & Mich., ex rel. Mohamad Sy v. Oakland Physicians Med. Ctr.,*

4

*LLC*, 143 S. Ct. 782 (2023) ("[A]bsent a finding of good cause, the court retains discretion as to whether or not to enlarge that timeframe.").

**1**

Good cause is "a reasonable, diligent effort to timely effect service of process." *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021). "'[L]ack of prejudice and actual notice are insufficient' to establish good cause, as are 'mistake of counsel or ignorance of the rules.'" *Thul v. Haaland*, No. 22-5440, 2023 WL 6470733, at *2 (6th Cir. Mar. 1, 2023), *cert. denied*, 144 S. Ct. 96 (2023) (internal citation omitted). The Sixth Circuit has identified "three scenarios" giving rise to good cause: "(1) when the defendant has intentionally evaded service; (2) when the district court has committed an error; and (3) when a pro se plaintiff suffers from a serious illness." *Id.* "The common denominator in these situations 'is that something outside the plaintiff's control prevents timely service.'" *Id.*

Consistent with this principle, "mere inadvertence on the part of counsel" does not justify a mandatory extension. *See Davis v. Brady*, 9 F.3d 107, 3 (6th Cir. 1993) (Table); *see also Friedman*, 929 F.2d at 1157 ("[C]ounsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause."). For example, the fact that parties had discussed a waiver of formal service did not generate good cause, even in conjunction with counsel's personal and professional problems. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521–22 (6th Cir. 2006); *see also Tombragel v. Oral & Facial Surgery Assocs., Drs. Perry, Morrison & Waters, LLC*, No. 1:24-CV-14, 2024 WL 3638118, at *2 (S.D. Ohio Aug. 2, 2024) ("[L]ack of knowledge of a defendant's address is not good cause for failing to serve that defendant (at least absent some evidence suggesting that the defendant is affirmatively taking steps to conceal that address.")); *Tines v. PepsiAmericas, Inc.*, 265 F.R.D.

5

285, 287–88 (W.D. Tenn. 2010) (counsel's "calendar error" was the product of carelessness and did not establish good cause); *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 754 (E.D. Ky. 2011) (defendant's refusal to waive service did not justify plaintiffs' failure to comply with Rule 4(m)).

Here, Plaintiff has not established good cause for a mandatory extension because he has not definitively demonstrated that a factor outside his control was responsible for the delay in service. Plaintiff initially asserted that the delay arose from not knowing Mr. Daulton's address. [R. 16.] However, "a plaintiff may not rely on another's delay in supplying needed information, but is obligated to pursue alternative methods in finding and serving defendant." *Friedman*, 929 F.2d at 1157 (citing *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988)). Further, "lack of knowledge of a defendant's address is not good cause for failing to serve that defendant (at least absent some evidence suggesting that the defendant is affirmatively taking steps to conceal that address)." *Tombragel*, 2024 WL 3638118, at *2. In any event, it appears Plaintiff was able to readily ascertain Mr. Daulton's address shortly after the Court ordered him to be served by November 16, 2025, demonstrating that Mr. Daulton's address was easily discernible to the Plaintiff.

Plaintiff relies heavily on allegations that Mr. Daulton has evaded service but provides only a list of times and dates on which attempted service was not achieved to support this claim. [R. 19 at 2; R. 21-1 at 1-2.] On the other hand, Mr. Daulton has provided a sworn affidavit that the security footage from his residence reveals no such attempts. [R. 20-1.] Although the Court does not doubt that Plaintiff is frustrated that his attempts to serve Mr. Daulton have not been successful, that on its own does not prove that Mr. Daulton is intentionally evading service.

6

Plaintiff also assumed that counsel for NAS will waive service on Mr. Daulton's behalf, which they have since indicated they do not have the authority to do. [R. 20-2.] The Court notes that sending a waiver form via e-mail to counsel for a co-defendant is not the proper procedure for requesting a waiver of service and directs the Plaintiff's attention to Rule 4(d) where those procedures are provided. Fed. R. Civ. Proc. 4(d). The Court also takes pause to note that the Plaintiff, in his own words, "started th[e] process" of requesting a waiver of service on November 14, 2025, the last business day before the Court imposed deadline to serve Mr. Daulton. [R. 19 at 2.] With all of this in mind, Plaintiff has not demonstrated a reasonable, diligent attempt to effect service on Mr. Daulton. Thus, a mandatory extension of time is inappropriate here.

### 2

Faced with an absence of good cause, the Court next considers whether the *Oakland Physicians* analysis weighs in favor of a discretionary extension. *See Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 569. "[W]hen deciding whether to grant a discretionary extension of time in the absence of a finding of good cause[,]" district courts in the Sixth Circuit consider the following factors:

> (1) whether an extension of time would be well beyond the timely service of process; (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, *i.e.*, would the plaintiff's lawsuit be time-barred; (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies; (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case. *Id.*

Here, the balance of the Oakland Physicians factors weighs in favor of an extension. The Plaintiff has not asked for a specific amount of time in his request but stated that "a significant

extension is not required." [R. 19 at 3.]  However, Plaintiff based this request on the erroneous assumption that counsel for NAS would "quickly waive service" on Mr. Daulton's behalf.  *Id.*  In any case, even a thirty-day extension would mean that service would be made almost four months late which this Court has previously called excessive under similar facts.  *Wessling v. Miner*, 5:24-cv-00340-GFVT, 2025 WL 1656636, at *2-3 (E.D. Ky. Jun. 10, 2025) (citing *Tombragel v. Oral & Facial Surgery Assoc.*, 1:24-cv-14, 2024 WL 3638118, at *2 (S.D. Ohio Aug. 2, 2024)).  Accordingly, the first *Oakland Physicians* factor counsels against an extension.

On the other hand, the second factor, prejudice to the defendant, favors granting an extension.  So far in the course of this litigation, Defendant NAS has removed this action to this Court and answered the Plaintiff's complaint.  [R. 1; R. 6.]  There has been no order for meeting and report or scheduling order entered, and the Court is still considering the Plaintiff's pending motion to remand.  [R. 7.]  Since the Court raised the service issue *sua sponte* in September, nothing substantive has been filed, and this litigation has essentially paused pending resolution of the service issue. Thus, other than the prejudice inherent in having to defend a civil suit, Mr. Daulton has not been prejudiced by the Plaintiff's delay in effecting service on him.

The third factor, whether the defendant has actual notice of the lawsuit, clearly weighs in the Plaintiff's favor.  Mr. Daulton has now filed two declarations in the record which evidence Mr. Daulton's knowledge of both the existence and substance of the lawsuit.  [R. 1-2; R. 20-1.] The first declaration consists of Mr. Daulton denying knowledge of the specific allegations in the Plaintiff's complaint.  [R. 1-2.]  Thus, Mr. Daulton clearly has actual notice of the lawsuitlawsuit,e third factor weighs in favor of an extension.

The fourth factor weighs against an extension because a dismissal without prejudice would not prejudice Plaintiff by barring his claims on statute of limitations grounds.  Plaintiff

8

brings claims of conspiracy and retaliation under the Kentucky Civil Rights Act against Mr. Daulton for events that took place starting in January of 2023 and continuing through July of 2024.  [R. 1-6 at 11-14.]  The statute of limitations for claims under the Kentucky Civil Rights Act is 5 years, pursuant to K.R.S. 413.120(2).  *Walker v. Commonwealth*, 503 S.W.3d 165, 172 (Ky. Ct. App. 2016) ("Kentucky law states that actions upon a liability created by statute, such as the KCRA, shall be commenced within five (5) years after the cause of action accrued." (cleaned up)).  Thus, Plaintiff still has over two years before dismissal without prejudice would prejudice him on statute of limitations grounds.

      The fifth factor, Plaintiff's good faith efforts to effect proper service of process or correct any deficiencies, weighs in favor of an extension.  Plaintiff has made some effort to effect proper service by obtaining Mr. Daulton's address, sending a process server to his home and work address on multiple occasions, mailing him the summons to his work address, and attempting to start the process of requesting a waiver of service.[1]  [R. 19; R. 21.]  Unfortunately for Plaintiff, both the request for waiver and mailed summons were procedurally deficient for the reasons discussed above.  The Court does not question that Plaintiff was earnestly confused about the service procedures, but Plaintiff is represented by counsel, so the Court is hesitant to accept that as a complete justification.  However, this is not a case in which counsel has remained idle for a prolonged period.  *See e.g. O'Brien v. Children's Home of Northern Ky.*, No. 3:22-cv-00066-

---

[1] Despite these efforts—which are supported by the record—Defendant NAS lodges accusations that Plaintiff never intended to serve Mr. Daulton and is intentionally defying this Court's orders. The Court does not wish to weigh in on the merits of the fraudulent joinder issue raised in the pending Motion to Remand but instead reminds the parties to balance the duty of zealous advocacy with the requirement to show appropriate courtesy and respect to opposing counsel. This includes refraining from making ad hominem attacks on opposing counsel.

GFVT, 2025 WL 645870 (E.D. Ky. Feb. 26, 2025).  Plaintiff appears committed to properly serving Mr. Daulton, and the Court thus finds that this factor weighs in favor of an extension.

The sixth and seventh factors are not relevant to the instant case. The Plaintiff does not represent himself *pro se* and there are no unique circumstances present in this case that tip the scales in either direction.  At this stage, the Court finds that the balance of factors weighs in favor of granting an extension of time for Plaintiff to serve Mr. Daulton.

**B**

Plaintiff also moves this Court to open discovery for the limited purpose of obtaining service information for Mr. Daulton.  [R. 22.]  Plaintiff seeks to open discovery so that he can "serv[e] NAS with an interrogatory seeking the address of where Daulton is currently staying, Daulton's email address, and Daulton's phone number."  *Id.* at 1.  Defendant NAS opposes this motion stating that "Plaintiff clearly never intended to serve Mr. Daulton at all but merely named him in this lawsuit to try [to] avoid removal to federal court."  [R. 23 at 1.]  NAS also states that it does not have "any different address on file for Mr. Daulton than what Plaintiff already possesses."  *Id.* at 2.  In reply, Plaintiff's counsel specifically denies the allegation that Plaintiff never intended to serve Mr. Daulton and instead asserts that she was operating under the "good faith belief that reattempting service on Daulton was meant to occur after it has been determined if the case would be in federal or state court so that Eskew could use a summons from the appropriate court."  [R. 24 at 2-5.]

Here, the parties have yet to meet and confer pursuant to Rule 26(f).  Under the Federal Rules of Civil Procedure, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."  Fed. R. Civ. P. 26(d)(1).  However, the Court may authorize expedited discovery in certain circumstances.  Fed. R. Civ. P. 26(d)(1).  Under this

10

standard "the party seeking discovery must demonstrate the need to deviate from the normal timing of discovery." *Arab Am. Civil Rights League v. Trump*, No. 17-10310, 2017 WL 5639928, at *2 (E.D. Mich. Mar. 31, 2017).

Although some courts have found that expedited discovery is appropriate only upon a *prima facie* showing that a claim is supported by a "real evidentiary basis," this Court has applied a "good cause" standard under similar circumstances. *Arista Records, LLC v. Does 1-15*, 2007 WL 5254326 (S.D. Ohio Nov. 5, 2007) (acknowledging the split among courts and applying the good cause standard); *5ifth Element Creative, LLC v. Kirsch*, 5:10-cv-255-KKC, 2010 WL 4102907, at *2 (E.D. Ky. Oct. 18, 2010) (applying the good cause standard). Courts in this Circuit have found that good cause to expedite discovery "is usually found in cases involving requests for injunctive relief, challenges to personal jurisdiction, class actions, and claims of infringement and unfair competition." *Lashuay v. Delilne*, No. 17-cv-13581, 2018 WL 317856, at *3 (E.D. Mich. Jan 8, 2018) (citing *In re Paradise Valley Holdings, Inc.*, No. 03-34704, 2005 WL 3841866, at *2 (Bankr. E.D. Tenn. Dec 29, 2005).

In *Arista Records*, the plaintiffs were faced with a similar, but distinguishable dilemma. 2007 WL 5254326, at *1. There, the plaintiffs knew their copyrighted sound recordings were being infringed, but they did not know by whom. *Id.* Thus, the plaintiffs sought to serve a third-party subpoena so they could learn the identity of the alleged infringers, as well as their addresses and telephone numbers in order to effect service on them. *Id.* The Court found good cause to permit expedited discovery because "without this information, plaintiffs could not meet their obligation to serve each defendant within [the time permitted by Rule 4(m)]." *Id.* at *3. However, *Arista Records* is distinguishable from the instant case in several ways.

11

First, the plaintiffs in *Arista Records* asserted a copyright claim which, due to the nature of the claim, "generally supports a finding of good cause" to expedite discovery for the purpose of ascertaining the defendants' identity and information. *Id.* Second, the entity on which the subpoena was served was the *only* entity that could provide the particular information that the plaintiffs sought. *Id.* Additionally, the subpoena was not served on a party to the action and there was a sense of exigency, insofar as the entity only kept records of the information the plaintiff sought for a finite period of time. *Id.* at 4.

Here, Plaintiff Eskew has easily ascertained Mr. Daulton's identity and home address, and the Court is unsure of what other information Plaintiff could need to achieve service on Mr. Daulton. [R. 19 at 2.] Further, Defendant NAS is not the only entity that has service information pertaining to Mr. Daulton, evidenced by Plaintiff himself obtaining Mr. Daulton's address from Accurint. *Id.* Importantly, the exigency that existed in *Arista Records* is simply not present here. In *Arista Records*, the plaintiffs faced permanent deletion of the information they needed to both identify and achieve service on the defendants if they were not granted expedited discovery. 2007 WL 5254326, at *4. In other words, if expedited discovery were not granted, the plaintiffs may have never been able to litigate their case. On the other hand, even if Mr. Daulton were dismissed from this action by the Court due to a failure of service, the dismissal would be *without* prejudice. Fed. R. Civ. P. 4(m). And finally, Defendant NAS is an opposing party to Plaintiff Eskew in this litigation. While the Court understands Plaintiff's difficulties in serving Mr. Daulton may not have been completely within Plaintiff's control, at this time the Court cannot say that it is Defendant NAS's responsibility to help Plaintiff serve a co-defendant. Thus, at least for now, the Court will deny Plaintiff's request to open discovery early for the purpose of obtaining service information relating to Mr. Daulton.

## III

Although the Plaintiff did not demonstrate good cause for his failure to serve Mr. Daulton, because the balance of the *Oakland Physicians* factors weighs in favor of a discretionary extension, the Court will grant the requested extension. However, the Court finds that there is not good cause to expedite discovery. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Extension of Time **[R. 19]** is **GRANTED**;

2. Plaintiff's Motion for Expedited Discovery **[R. 22]** is **DENIED**;

3. Plaintiff **SHALL** serve Defendant Drew Daulton **within thirty (30) days from entry of this Order**, or face dismissal of the claims against him under Rule 4(m);

4. Plaintiff **SHALL** file proof of service in the record.

This the 17th day of December, 2025.

Gregory F. Van Tatenhove
United States District Judge